UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROBERT MURRAY, as Leviticus Lucifer,　:

                                     :

            Plaintiff,　　:

                                     :

     - against -　　:

                                     :

SIDIKI DABO and EGUAGIE
EHIMWENMA,　　:

                                     :

            Defendants.　　:
------------------------------------------------------------X

22 Civ. 4026 (VEC) (GS)

REPORT AND
RECOMMENDATION

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Robert Lee Murray ("Murray" or "Plaintiff"), proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 asserting constitutional violations during his commitment at Kirby Forensic Psychiatric Center ("Kirby").  Defendants Sidiki Dabo ("Dabo") and Eguagie Ehimwenma ("Ehimwenma"), a doctor and nurse, respectively, at Kirby, move for dismissal of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 33 ("Motion" or "Mot.")); *see also* Dkt. Nos. 32, 34-41).  Murray has not submitted any papers in opposition to the Motion.

For the reasons set forth below, the undersigned respectfully recommends that Defendants' motion for summary judgment be **GRANTED** and Plaintiff's complaint be dismissed.

# BACKGROUND[1]

## A. Plaintiff's Hospitalization at Kirby

On November 20 and 22, 2021, Plaintiff allegedly assaulted multiple police officers by kicking, headbutting, biting, and punching them. (Dkt. No. 46 (Declaration of Sidiki Dabo, M.D. ("Dabo Decl.") ¶ 2)). He was charged with Assault in the Second Degree and Assault in the Third Degree in New York state court. (*Id.*). Following a suicide attempt while in pretrial detention at Rikers Island, Murray was found unfit to proceed to trial and committed to Kirby, a psychiatric hospital operated by the New York State Office of Mental Health, pursuant to N.Y. Crim. Proc. L. §§ 730.40 and 730.50. (*Id.* ¶¶ 1-2; Dkt. No. 34 (Declaration of Antwaun Gavins ("Gavins Decl.") Ex. 1 at 5:19-24)).[2]

Plaintiff was admitted to Kirby on April 7, 2022. (Dabo Decl. ¶ 2). Dabo was Murray's treating psychiatrist. (*Id.*). Murray was diagnosed as suffering from "schizoaffective disorder" with symptoms including "disorganized thinking, paranoia, and grandiose delusions." (*Id.* ¶ 1). Following his admission to Kirby, Murray allegedly was "actively psychotic and extremely aggressive toward staff and refused to take medications or cooperate with treatment." (Dkt. No. 43 (Declaration of Gareen Hamalian, M.D. ("Hamalian Decl.") ¶ 3); *see also* Dabo Decl. ¶ 3 ("During

---

[1] Because Plaintiff did not submit any evidence in response to Defendants' Motion, the facts in this section are based on the evidence submitted as part of Defendants' Motion. (*See* Dkt. No. 38 (Local Civil Rule 56.1 Statement)). The Court also lays out the allegations contained in the operative complaint. (*See* Dkt. No. 16).

[2] *See Charles W. v. Maul*, 214 F.3d 350, 354-55 (2d Cir. 2000) (summarizing New York law governing commitment to state mental health facility when criminal defendant is deemed unfit to stand trial).

the course [of] Plaintiff's treatment at Kirby, he was floridly psychotic and manic, violent, and physically assaultive.")).  On one occasion, Murray bit the legs of two different staff members who were attempting to administer emergency medication to him.  (Dabo Decl. ¶ 13).

On April 22, 2022, Kirby submitted an application for involuntary treatment over objection to the New York Supreme Court, New York County.  (*Id.* ¶¶ 13, 15). A hearing was held on April 27, 2022, at which Dabo testified on behalf of Kirby and Murray testified for himself.  (*Id.* ¶ 15).  The Supreme Court granted the hospital's application over Murray's objection.  (*Id.*; *see also* Gavins Decl. Exs. 1, 2).

Thereafter, Murray began taking his psychiatric medications and his clinical condition improved.  (Dabo Decl. ¶ 16).  On July 22, 2022, Murray was discharged from Kirby and "referred as fit to stand trial."  (*Id.*).

## B. Plaintiff's Allegations

The operative complaint ("Complaint" or "Compl.")[3] seeks $10 million in total damages concerning four distinct incidents during Plaintiff's hospitalization.  First, Plaintiff alleges that on April 15, 2022, Dabo ordered Kirby staff to "hold [Plaintiff] down and assault" him and ordered Ehimwenma to inject him with medication. (Compl. § 3.C).

---

[3] The operative complaint, filed on October 4, 2022, is denominated as the "Second Amended Complaint."  (Dkt. No. 16).  However, a review of the docket shows that this was the only amended complaint that Plaintiff has filed after submitting the original complaint.  Therefore, for ease of reference, the Court will refer to the "Second Amended Complaint" as the "Complaint."

Second, Murray claims that on April 20, 2022, Kirby "staff dragged me by one leg in to a room," and a man who "look[ed] like Dabo" told Ehimwenma he "think[s] I have [something] in my [b]ut[t]" and he then "put a finger up my [b]ut[t]," and "th[e]y kept us[]ing fo[r]ce on me." (*Id.*).

Third, Murray accuses Dabo of lying during his treatment over objection hearing because Dabo informed the Supreme Court that Murray "was assaulting staff when I was the one being assaulted. . . ." (*Id.*). Due to Dabo's alleged misrepresentations during this hearing, Plaintiff avers that he was forced to take medication "against [his] will." (*See id.*).

Fourth, Murray alleges that, during the April 15, 2022 incident, Dabo told Kirby staff to "take [away] my wheelchair" and Murray was without his wheelchair "for like 4 [d]ays." (*Id.*).

Although the Complaint only specifies an Eighth Amendment claim (Compl. § 2.B), Defendants construe it as also alleging due process violations under the Fourteenth Amendment. (*See* Mot. at 13-23). Construing the Complaint liberally, as required when the plaintiff is *pro se*, *see, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*), the Court does the same.

## C. Procedural History

Plaintiff initiated the instant action on May 16, 2022, while undergoing treatment at Kirby. (Dkt. Nos. 1, 2).[4] The original complaint identified only Dr.

---

[4] The Honorable Valerie E. Caproni referred this matter to Magistrate Judge Gabriel W. Gorenstein for general pretrial supervision as well as dispositive motions requiring a report and

Dabo as a named defendant and sued multiple Jane and John Does. (Dkt. No. 2). On July 28, 2022, the New York State Office of the Attorney General ("OAG") identified Ehimwenma as the only other ascertainable defendant and Judge Gorenstein ordered Plaintiff to file an amended complaint thirty days after Murray's receipt of OAG's letter. (Dkt. Nos. 11, 13).

Although Plaintiff did not meet the September 1, 2022 deadline to file an amended complaint, Judge Gorenstein, *sua sponte*, extended Plaintiff's time to do so until October 13, 2022. (Dkt. No. 15). Plaintiff complied with this order and filed the Complaint against Defendants Dabo and Ehimwenma on October 4, 2022.[5] (Dkt. No. 16). After they were served, Defendants sought a premotion conference in anticipation of a motion to dismiss the Complaint. (Dkt. No. 24). In turn, Judge Gorenstein set a briefing schedule, waived his premotion conference requirement, and ordered OAG to submit Defendants' motion as one for summary judgment if the motion would rely on evidence outside of the pleadings. (Dkt. No. 26).

Defendants filed their Motion on April 10, 2023. (Dkt. No. 32). Plaintiff did not comply with the Court's May 1, 2023 deadline to oppose Defendants' Motion. However, he submitted a letter dated May 21, 2023 stating that he had lost access to his legal papers. (Dkt. No. 49). Plaintiff's letter declared his intention to oppose

recommendation. (Dkt. No. 8). The undersigned was reassigned to this case on September 19, 2023, and Judge Caproni's order of reference remains in effect.

[5] The Complaint does not name any Jane or John Doe Defendants.

the Motion, and set forth what Plaintiff described as an "Affidavit of Facts," which was unsworn.  (*Id*.).

On June 1, 2023, Judge Gorenstein issued an Order granting Plaintiff an additional opportunity to respond to the Motion.  (Dkt. No. 50).  The Order directed Defendants to re-serve Plaintiff with their motion papers (and an accompanying video), and directed Murray to file his opposition to the Motion by July 7, 2023. (*Id*.).  The Order also required Murray to include in his opposition a response to each paragraph of Defendants' Local Rule 56.1 Statement, and warned that he should also include "any sworn statements or other documentation that support his factual assertions because the Court will not consider unsworn factual statements (such as those contained in his letter of May 21, 2023)."  (*Id*.).

Following Murray's subsequent failure to meet the July 7 deadline, Defendants, on August 15, 2023, requested that the Court deem their Motion as unopposed and fully briefed for purposes of adjudication.  (Dkt. No. 58).  The Court has refrained from acting on that request until now.  To date, Plaintiff has not opposed Defendants' Motion, nor has he filed anything on the docket besides two change of address notifications on August 21, 2023 and February 2, 2024, respectively.  (*See* Dkt. Nos. 60, 62).

## LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted).  Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

 "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (cleaned up).  Accordingly, the Court must "read the pleadings of a pro se plaintiff liberally" and construe them to raise "the strongest possible arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (cleaned up).  Nonetheless, *pro se* pleadings still "must contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *Twombly*, 550 U.S. at 555).

**B. Summary Judgment**

"Granting summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Pantoja v. Enciso*, No. 18 Civ. 11842 (PAE) (GWG), 2019 WL 6704684, at *4 (S.D.N.Y. Dec. 10, 2019), *report and recommendation adopted by* 2020 WL 70919 (S.D.N.Y. Jan. 6, 2020) (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) (citation omitted).

When determining whether there is a genuine issue of material fact before the court, "the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial,' . . . and to present such evidence that would allow a jury to find in his favor." *Minus v. City of N.Y.*, 488 F. Supp. 3d 58, 63 (S.D.N.Y. 2020) (quoting *Anderson*, 477 U.S. at 256). A court must view the facts "in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (cleaned up). "'[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party,'

summary judgment must be denied." *Minus*, 488 F. Supp. 3d at 63 (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)).

On a motion for summary judgment against a *pro se* litigant, the court affords that party "special solicitude." *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). As with a motion to dismiss, this "special solicitude" includes liberally construing the *pro se* party's submissions and interpreting them to raise the strongest arguments they suggest. *See Alli v. City of N.Y.*, No. 21 Civ. 4866 (ALC) (SN), 2023 WL 6393403, at *3 (S.D.N.Y. Sept. 29, 2023). "This special solicitude is not unlimited, however, and does not relieve a party of his or her duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* (cleaned up). Like any other litigant, "a pro se plaintiff cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor." *Minus*, 488 F. Supp. 2d at 59 n.2 (cleaned up); *see also Veras v. Jacobson*, No. 18 Civ. 6724 (KMK), 2022 WL 2133842, at *4 (S.D.N.Y. June 14, 2022) ("a pro se party's bald assertions unsupported by evidence are insufficient to overcome a motion for summary judgment") (cleaned up).

Where, as here, "a motion for summary judgment is unopposed by a pro se plaintiff, courts may not grant the motion 'without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial,' and in doing so, 'may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1

statement.'" *Minus*, 488 F. Supp. 3d at 63 (quoting *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). Thus, the Court "may grant an unopposed motion for summary judgment against a pro se plaintiff if: (1) the pro se plaintiff has received adequate notice that failure to file a proper opposition may result in dismissal of the case; and (2) the facts as to which there is no genuine dispute show that the moving party is entitled to a judgment as a matter of law." *Id.* at 63-64 (cleaned up).

### C. 42 U.S.C. § 1983

Section 1983 is the mechanism through which plaintiffs may sue a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (cleaned up). "The purpose of [Section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted).

"To establish a claim under § 1983, a plaintiff must show '(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color' of state law." *Williams v. King*, No. 11 Civ. 1863

(LGS), 2018 WL 565719, at *2 (S.D.N.Y. Jan. 24, 2018) (quoting *Velez v. Levy*, 401

F.3d 75, 84 (2d Cir. 2005)).[6]

## DISCUSSION

The Court first addresses whether to convert Defendants' motion from a

motion to dismiss to one for summary judgment.  After concluding that conversion

is warranted, the Court next addresses Defendants' summary judgment arguments

and finds, after a review of Defendants' uncontroverted evidence, that Defendants

are entitled to summary judgment as a matter of law.

### A. Because Defendants' Motion Relies Primarily on Material Outside the Pleadings, Conversion to Summary Judgment Is Warranted

On a motion to dismiss, "the Court's review is circumscribed—it is generally

prohibited from looking beyond the pleadings."  *Henderson v. Alvarez*, No. 17 Civ.

---

[6] The Complaint does not specify whether Murray's Section 1983 claims are asserted against the Defendants in their individual or official capacities.  As Defendants note (Mot. at 24), to the extent Plaintiff brings claims against them in their official capacities, the claims are barred by the Eleventh Amendment because Plaintiff seeks money damages against them.  The Eleventh Amendment "bars the award of money damages against state officials in their official capacities" and Defendants, as employees of an agency of the State of New York, are "state officials for purposes of the Eleventh Amendment."  *Al-Haj v. OMH of N.Y.*, No. 18 Civ. 5505 (VEC) (SN), 2019 WL 6831391, at *2 (S.D.N.Y. Aug. 5, 2019), *report and recommendation adopted by* 2019 WL 4051478 (S.D.N.Y. Aug. 28, 2019) (cleaned up); *see also McNair v. Kirby Forensic Psychiatric Ctr.*, No. 09 Civ. 6660 (SAS), 2010 WL 4446772, at *1, *7 (S.D.N.Y. Nov. 5, 2010).

Accordingly, the Court construes the Complaint as asserting claims against Defendants in both their official and individual capacities, only the latter of which are not barred by the Eleventh Amendment.  *See Al-Haj*, 2019 WL 6831391, at *2 (dismissing claims against Kirby doctor in his official capacity but addressing claims against him in his individual capacity); *Pritchett v. Artuz*, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000) ("reading a *pro se* complaint as broadly as possible, I presume that the defendants are sued in their individual capacities"); *Francis v. Morganthau*, No. 97 Civ. 5348 (SAS), 1997 WL 642555, at *1 (S.D.N.Y. Oct. 16, 1997) ("where [a] complaint does not clearly specify whether suit is against [a] public official personally or in his official capacity, it is appropriate for [the] [C]ourt to allow the case to proceed against the official in his individual capacity").

3977 (AJN), 2020 WL 2571013, at *3 (S.D.N.Y. May 21, 2020).  But a court also may consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).  And even when "a document is not incorporated by reference, the court may consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

Here, after arguing that Murray's Eighth Amendment claim is legally insufficient, Defendants construe the Complaint as seeking relief for four distinct violations of Murray's Fourteenth Amendment due-process rights: (1) Defendants' administration of "Emergency Psychiatric Medication;" (2) the "Alleged Sexual Assault" on April 20, 2022; (3) the "Court-ordered treatment over objection;" and (4) limiting Murray's "[u]se of a wheelchair."  (Mot. at 13-19).  Defendants then argue that all four of these claims should be dismissed, but only their argument on the first claim references the pleadings alone.  (*See id.* at 14-15).  Their arguments for dismissal of the second, third, and fourth claims all rely heavily on evidence submitted along with their Motion.  This evidence includes, *inter alia*, declarations from Dabo, Ehimwenma, and Dr. Gareen Hamalian, another Kirby psychiatrist; treatment notes and other documents attached to these declarations; surveillance videos regarding the April 20, 2022 incident; and a transcript of Plaintiff's treatment over objection hearing on April 27, 2022.  (*See id.* at 16-19, 22-23; *see also*

12

Gavins Decl. & Exs. 1-5; Hamalian Decl. & Ex. 1; Ehimwenma Decl. & Ex. 1; Dabo Decl. & Exs. 1-4).

This evidentiary material is outside the pleadings and may not properly be considered on a motion to dismiss under Rule 12(b)(6). Although Defendants argue that the April 20, 2022 surveillance videos are "incorporated by reference into the pleadings" (Mot. at 16), the Complaint refers to the videos only once, by way of noting that there "should be video" of "all incidents." (Compl. § V). It is evident that Plaintiff had not at that point seen the videos and was not relying on them for his allegations. Accordingly, the videos cannot be considered under the "incorporation by reference" doctrine. *See, e.g.*, *Ashley v. Gonzalez*, No. 19 Civ. 6282 (AJN), 2020 WL 7027501, at *2 (S.D.N.Y. Nov. 30, 2020) ("extraneous videos documenting the events in question are not properly considered on a motion to dismiss unless the plaintiff relied upon the video when drafting the complaint").[7]

The Court thus cannot consider most of Defendants' arguments for dismissal under Rule 12(b)(6) and must decide whether to convert the motion to one for summary judgment under Rule 56, as Defendants request in the alternative (Mot. at 19-23). *See Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (when arguments reliant on materials outside the pleadings are made on a motion to dismiss, "a

---

[7] Defendants also argue that the transcript of the treatment over objection hearing is "reference[d]" in or "integral to" the Complaint and thus may be considered on a motion to dismiss. (Mot. at 18). But in fact, the Complaint does not refer to or rely upon the transcript. And even if the transcript could be considered on a motion to dismiss, it would not help Defendants prevail on a motion to dismiss. Murray's claim is that Dr. Dabo *lied* at the hearing. Proving, through the transcript, what Dabo testified to does not negate Murray's claim at the pleading stage.

district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.") (cleaned up); *accord, e.g., Henderson*, 2020 WL 2571013, at *4; *Alkholi v. Macklowe*, No. 17 Civ. 16 (DAB), 2017 WL 6804076, at *5 (S.D.N.Y. Dec. 22, 2017); *see also Glob. Network Communs. Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006) (holding that district court erroneously "considered external material in its ruling" granting defendants' 12(b)(6) motion and should instead have converted motion to one for summary judgment).

Under the Federal Rules of Civil Procedure, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When a "party is proceeding pro se, such notice 'is particularly important because the pro se litigant may be unaware of the consequences of his failure to offer evidence bearing on triable issues. Accordingly, pro se parties must have unequivocal notice of the meaning and consequences of conversion to summary judgment.'" *Henderson*, 2020 WL 2571013, at *5 (quoting *Hernandez v. Coffey*, 582 F.3d 303, 307-08 (2d Cir. 2009) (cleaned up)).

Defendants met this "unequivocal notice" requirement by providing Murray with a Local Civil Rule 12.1 Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings. (*See* Dkt. Nos. 40, 47).

Defendants' Notice provided Murray with notice of all the facts required under Local Civil Rule 12.1. (*Id.*).[8] Courts subject to Local Civil Rule 12.1 "uniformly hold that such facts support conversion, even when the non-moving party is [proceeding] pro se." *Henderson*, 2020 WL 2571013, at *5 (citing as examples *Edo v. Martiny*, No. 15 Civ. 202 (CBA), 2016 WL 7839337, at *2 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted by* 2017 WL 785653 (E.D.N.Y. Mar. 1, 2017); *Jackson v. Hanson*, No. 12 Civ. 654 (DAB), 2014 WL 787820, at *12-13 (S.D.N.Y. Feb. 25, 2014); *Black v. Blackmun*, No. 11 Civ. 2372 (BMC) (ALC), 2011 WL 6019394, at *1 (E.D.N.Y. Dec. 1, 2011); *Walker v. Youman*, No. 02 Civ. 5957 (NGG) (LB), 2006 WL 525921, at *3 (E.D.N.Y. Mar. 3, 2006); *Collins v. Goord*, 438 F. Supp. 2d 399, 412 n.14 (S.D.N.Y. 2006); and *Curry v. Mazzuca*, No. 05 Civ. 1542 (NRB), 2006 WL 250487, at *4-5 (S.D.N.Y. Feb. 2, 2006)).

In contrast to several of the cases finding the Local Civil Rule 12.1 Notice sufficient for conversion purposes,[9] Murray, like the plaintiff in *Henderson*, has not responded to Defendants' Motion. However, in *Henderson*, Judge Nathan noted that the fact that the *pro se* plaintiff did not respond to or oppose the motion,

---

[8] The Rule 12.1 Notice informs the *pro se* plaintiff that the moving defendants have filed additional written material in support of their motion to dismiss; that they have asked the reviewing court to consider this additional material; that the court may elect to treat the motion to dismiss as a motion for summary judgment; that the plaintiff must submit documentary evidence or witness affidavits to counter the material submitted by the defendants and may not rely on the allegations in his complaint; and that failure to do so may result in the court accepting the facts asserted by the defendants as true and dismissing the case without a trial. *See Henderson*, 2020 WL 2571013, at *5; Local Civil Rule 12.1.

[9] For example, in *Edo*, the court held conversion to be appropriate because of the moving parties' Local Civil Rule 12.1 Notice and that it was "coupled with an evidentiary submission by the non-moving party." 2016 WL 7839337, at *3.

despite making other filings in the case, weighed in favor of conversion. *Henderson*, 2020 WL 2571013, at *5.

The same is true here. In particular, after Defendants filed their Local Civil Rule 12.1 Notice and a certificate of service thereof, Plaintiff wrote to the Court expressing his unequivocal intention to respond to Defendants' motion. (Dkt. No. 49). It would thus be extremely difficult for Murray to claim that he was not on notice of the potential for Defendants' motion to dismiss to be converted to one for summary judgment.

Consistent with "the uniform practice of courts in this Circuit," *Henderson*, 2020 WL 2571013, at *5, the Court thus recommends converting Defendants' Motion to one for summary judgment and continues its analysis accordingly.

## B. Plaintiff Has Received Adequate Notice That Failure to Oppose Defendants' Motion Could Result in Dismissal of His Case

As noted above, in considering this unopposed motion for summary judgment, the Court must ascertain whether Murray, as a *pro se* plaintiff, "received adequate notice that failure to file a proper opposition may result in dismissal of the case." *Minus*, 488 F. Supp. 3d at 63.

This requirement is satisfied here. Defendants' Local Civil Rule 12.1 Notice specifically stated: "THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION ON TIME by filing sworn affidavits as required by Rule 56(c) and/or other documents." (Dkt. No. 40). Although Murray claimed in his May 21, 2023 letter

that he lost Defendants' motion papers, Judge Gorenstein, in his June 1, 2023 Order, directed Defendants to re-serve Murray with another set of the papers, including the Rule 12.1 Notice, and Defendants did so. (Dkt. Nos. 49-51). Furthermore, the June 1, 2023 Order (which was also sent to Murray) itself stated: "As summarized in Local Civil Rule 56.2, plaintiff is warned that if he fails to respond to defendants' motion with sworn statements or documents contradicting the defendants' facts, the Court may accept the defendants' facts as true and the case may be dismissed." (Dkt. No. 50; Docket Entry dated June 2, 2023).

Over the course of this case, the docket reflects that Murray has been housed at several different locations. (*See* Dkt. Nos. 14, 30, 60, 62). However, the docket also reflects that each time Defendants sent Murray their motion papers or other filings related to the Motion, they filed a certificate of service showing that the relevant documents were mailed to Murray's then-current address as indicated on the docket. (Dkt. Nos. 47, 57). Similarly, Defendants filed a certificate of service for their letter requesting that their Motion be unopposed. (Dkt. No. 59). After Plaintiff shortly thereafter filed another change of address on the docket (Dkt. No. 60), Defendants filed a subsequent certificate of service showing that the letter was re-mailed to Plaintiff's new address. (Dkt. No. 61). Given this history, the Court concludes that Murray has received notice of Defendants' Motion and of the fact that, if he did not file a proper opposition, his case could be dismissed.

17

**C. Defendants Are Entitled to Summary Judgment**

**1. Eight Amendment Protections Are Not Available to Plaintiff**

The only constitutional basis Plaintiff explicitly identifies for his claims is the Eighth Amendment. (Compl. § II.B). The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," U.S. CONST. AMEND. VIII, and has applied to the states since the U.S. Supreme Court's ruling in *Robinson v. California*, 370 U.S. 660 (1962).

However, the Supreme Court has also made clear that "Eighth Amendment protections against the use of force attach only after conviction." *Domeneck v. City of N.Y.*, No. 18 Civ. 7419 (PGG), 2019 WL 5727409, at *10 (S.D.N.Y. Nov. 5, 2019) (citing, *inter alia*, *Whitley v. Albers*, 475 U.S. 312, 318-26 (1986)); *see also Wims v. N.Y.C. Police Dep't*, No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011) ("[T]he Eighth Amendment does not attach until after conviction and sentencing, as 'it was designed to protect those convicted of crimes.'") (quoting *Ingraham v. Wright*, 430 U.S. 651, 664 (1977)); *Lombardo v. Holanchock*, No. 07 Civ. 8674 (DLC), 2008 WL 2543573, at *9 (S.D.N.Y. June 25, 2008) ("By its terms, the Eighth Amendment applies only to 'punishment,' and as 'an insanity acquittee . . . was not convicted, he may not be punished.'") (quoting *Jones v. United States*, 463 U.S. 354, 369 (1983)).

Murray was committed to Kirby during the pretrial phase of his state criminal case to determine if he could be returned to fitness to stand trial.

(Hamalian Decl. ¶ 2). Because the complained-of conduct occurred before any conviction on the state-level assault charges, Plaintiff's Eighth Amendment claim should be dismissed. *See Domeneck*, 2019 WL 5727409, at *11 ("[h]ere, Plaintiff's Eighth Amendment claim fails because the alleged harm occurred prior to Plaintiff's conviction, and the Eighth Amendment attaches only after conviction").

### 2. Plaintiff's Fourteenth Amendment Claims Fail As A Matter of Law Based on the Uncontroverted Evidence

Although not cognizable under the Eighth Amendment, the conduct alleged in the Complaint is potentially redressable under the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Lindsey v. Butler*, 43 F. Supp. 3d 317, 325-26 (S.D.N.Y. 2014) (analyzing arrestee's claim of excessive force under the Fourteenth Amendment rather than the Eighth Amendment). The Court agrees with Defendants' reading of the Complaint as setting forth four separate claims for alleged violations of Murray's due process rights, and analyzes each in turn.

### i. Involuntary Medication

"The Due Process Clause of the Fourteenth Amendment accords patients a liberty interest in avoiding unwanted administration of antipsychotic drugs." *Inesti v. Hogan*, No. 11 Civ. 2596 (PAC) (AJP), 2013 WL 5677046, at *11 (S.D.N.Y. Sept. 30, 2013) (citing *Washington v. Harper*, 494 U.S. 210, 221-22 (1990)). Even so, "in certain situations where a patient presents a danger to [him]self and others, the patient's liberty interest yields to the state's interest in protecting the patient and others." *Brinson v. Kirby Forensic Psychiatric Ctr.*, No. 16 Civ. 1625 (VSB), 2018

19

WL 4680021, at *7 (S.D.N.Y. Sept. 28, 2018).  This interplay between a psychiatric patient's liberty interest, and the potential for the state to override it in certain emergency situations, is "well[-]settled."  *Inesti*, 2013 WL 5677046, at *11 ("it is well[-]settled that a patient's liberty interest . . . is overridden in an emergency, where failure to medicate forcibly would result in a substantial likelihood of physical harm to that patient, other patients, or to staff members of the institution") (cleaned up); *see also Anthony v. City of N.Y.*, 339 F.3d 129, 142 (2d Cir. 2003) (finding involuntary medication of plaintiff did not violate Due Process Clause where hospital "staff reasonably believed that [plaintiff] was a danger to herself or to others").

Although the Complaint focuses only on one alleged instance of involuntary administration of medication, occurring on April 15, 2022, Defendants have provided evidence that Murray received medication without his consent on six separate occasions.  These occurred on April 7, 8, 9, 15, and 20, 2022 (two times on the latter day).  (*See* Dabo Decl. ¶¶ 5, 6, 7, 9, 11 & 13).

Liberally construing the Complaint to allege that each involuntary injection was unjustified, and that Defendants were responsible for these injections, the unrebutted evidence in the record demonstrates that an appropriate justification for each of these injections (including the one on April 15) exists:

- Upon his admission to Kirby on April 7, "Plaintiff was agitated, screaming, [and] threatening to assault staff." (Dabo Decl. ¶ 5).  Kirby staff injected him with haloperidol, lorazepam, and diphenhydramine and placed him on one-on-one observation to minimize the risk to himself and others.  (*Id.*).

- On April 8, Murray exhibited symptoms similar to the day before and "was again loud, combative, and threatening." (*Id.* ¶ 6). Hospital staff again administered emergency medication. (*Id.*).

- On April 9, Murray "woke up and started screaming obscenities," appearing to "respond to internal stimuli. He began threatening staff and making vulgar comments," stating "I will fuck you up." (*Id.* ¶ 7). For the third day in a row, Murray received emergency medication. (*Id.*)

- On April 15, a day after he "engaged in menacing conduct and made sexual, racial, and threatening comments" toward Dabo, Murray "was again verbally and physically aggressive, threatening [and] spitting on staff," and stating: "I'm gonna kill you, I'm gonna straight murder you." (*Id.* ¶¶ 8-9). After verbal attempts to control this behavior were ineffective, Murray "was given Haldol 10mg for psychosis, Ativan 2mg for anxiety, and Benadryl 50 mg Intramuscular (IM) for Extrapyramidal Symptoms (EPS)." (*Id.* ¶ 9).

- In the morning of April 20, as part of a longer episode discussed *infra*, Plaintiff's behavior escalated to the point of "screaming and threatening to assault and spit on staff [to] spread an infectious virus." (*Id.* ¶ 11). As a result, "[s]taff activated the psychiatric emergency response team and gave Plaintiff emergency medications." (*Id.*).

- In the evening on April 20, Murray "began screaming loudly in the day room . . . and began threat[en]ing staff." (*Id.* ¶ 13). Kirby personnel "gave Plaintiff emergency STAT medications comprised of Lorazepam 2mg for extreme agitation, Haloperidol 10 mg IM for psychotic agitation, and Diphenhydramine 50 mg for prevention of EPS." (*Id.*). While staff attempted to administer the medication, Murray "bit the legs of two different staff members." (*Id.*).

In his declaration, Dabo affirms that Murray required these emergency injections given the risks he posed to himself, other patients, and staff and his consistent refusal to take psychiatric medications voluntarily. (Dabo Decl. ¶¶ 5-14). Thus, for each of these instances, including on April 15, 2022, when Murray "was injected with . . . medications, the record indicates the existence of emergency situations." *Inesti*, 2013 WL 5677046, at *12. Moreover, Murray has submitted no

evidence to "refute that he was forcibly medicated only during emergencies. There is therefore no dispute as to whether [Murray's] rights were violated." *Id.*

Further, as the psychiatrist leading Mr. Murray's care team, Dr. Dabo's "professional[] judgment [was] presumptively valid." *Id.* (citing *Youngberg v. Romeo*, 457 U.S. 307, 323 (1982)). Plaintiff has presented no evidence (1) rebutting the presumption that "the medical judgment" of Dabo and Kirby staff was valid, or (2) suggesting that Dabo's decisions "substantially departed from accepted practice." *Id.* For these reasons, the Court should grant summary judgment to Defendants on Plaintiff's involuntary medication claim.

### ii.  April 20, 2022 Incident

Murray alleges that in the morning of April 20, 2022, "staff dragged me by one leg in to a room . . . a man that look like Dabo told [Ehimwenma] that he think I have in my [butt][.] [He] put a finger up my [butt] . . . they kept [using] [force] on me." (Compl. § 3.C). The Court construes these allegations as a claim for excessive force under the Fourteenth Amendment.[10]

---

[10] Defendants characterize Murray's allegations with respect to the morning of April 20, 2022 as a "sexual assault" claim. (Mot. at 16-17, 22-23). Although the Second Circuit has recognized freedom from "sexual [assault] by a state actor" as a cognizable claim under the Fourteenth Amendment's Due Process Clause, *United States v. Giordano*, 442 F.3d 40, 47 (2d Cir. 2006), the Court reads the Complaint as alleging an unjustified body cavity search using excessive force, rather than an attempt at sexual gratification. *See Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) (explaining Eighth Amendment sex abuse claims are cognizable where a state official's "intentional contact with an inmate's . . . intimate area . . . serves no penological purpose and is undertaken with the intent to gratify the [state official's] sexual desire or humiliate the inmate"). If and to the extent Plaintiff is alleging that he was sexually assaulted, that claim also fails. *See Lewis v. Huebner*, No. 17 Civ. 8101 (KMK), 2020 WL 1244254, at *9 (S.D.N.Y. Mar. 16, 2020) (dismissing a Fourteenth Amendment sexual assault claim under the *Crawford* framework where contact with "Plaintiff's 'intimate area' came in the context of an injection" that served a legitimate purpose).

Pretrial detainees are protected from excessive force under the Fourteenth Amendment's Due Process Clause. *See Genao v. City of N.Y.*, No. 21 Civ. 301 (AT) (VF), 2024 U.S. Dist. LEXIS 2286, at *10 (S.D.N.Y. Jan. 4, 2024) ("the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment") (cleaned up). When bringing such a claim, "the plaintiff must show that 'the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.'" *Brinson*, 2018 WL 4680021, at *8 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). Under *Kingsley*, "the standard to determine whether a government actor applied excessive force is one of objective reasonableness, taking into account the 'facts and circumstances of each particular case.'" *Id.* (quoting *Kingsley*, 576 U.S. at 397). "Whether or not the force applied was reasonable depends on 'the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'" *Id.*

Having closely reviewed the surveillance video, treatment notes, and Ehimwenma's declaration concerning this incident, the Court concludes that no reasonable juror could find that Defendants[11] employed excessive force or assaulted

---

[11] Dr. Dabo has sworn that he was not at Kirby during the date of this incident (Dabo Decl. ¶ 11 ("I was not at the hospital when this incident occurred")), despite Plaintiff's allegation that Dabo may

Plaintiff or that their actions were not rationally related to a legitimate government purpose, *i.e.*, the preservation of safety of hospital staff and delivering medical care to a patient in distress.

The nearly twenty-seven-minute video, submitted alongside Defendants' Motion, shows that, for the first eleven minutes, Kirby staff attend to Plaintiff calmly—without touching him—while he shouts about not wanting to be raped. (Gavins Decl. Ex. 5).[12]  Only when Plaintiff demonstrates an inability to calm himself do hospital staff approach Murray to restrain him and administer emergency medication.  (*Id.* at 11:00-11:12).  From 11:12 until Plaintiff fully evades the camera's view at 11:30, he cries out "they're raping me" while being carried into his room, though staff are only carrying him by his limbs.  From the 11:30 mark until the 12:48 mark, the camera does not catch Plaintiff's interactions with Kirby staff in his room while he continues to yell that he is being raped.  At 12:48, Plaintiff flings himself out of his room, as hospital staff—who have completed the administration of medication—put their hands up in the air in a clear effort to avoid any more physical contact with Plaintiff than is necessary.  (*Id.* at 12:48).  For roughly the next thirteen minutes of the video, Plaintiff repeatedly claims he was

---

have ordered Ehimwenma to hold Plaintiff down and assault him.  Nor does the video, the treatment notes, or any other evidence in the record indicate that Dabo was present.  This constitutes a separate basis for dismissing this claim against Dabo.  *See Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (to establish individual liability in § 1983 action, plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation").

[12] Defendants submitted another video under seal of the same incident from a different angle, which the Court has also reviewed.  (*See* Gavins Decl. Ex. 4).  However, the Court's analysis relies on Exhibit 5 to the Gavins Declaration, which provides a better visual of the incident complained of on the morning of April 20, 2022.

raped while he sits on the floor of the hallway, with his back against the wall and with his underpants below his waist. (*Id.* at 12:48-25:50). Finally, Plaintiff is able to calm himself around the 26:00 minute mark, when he puts his underpants back on and returns to his wheelchair while telling someone passing by, who was not interacting with him, "don't come near me," before wheeling himself down the hall as the video ends. (*Id.* at 25:50-26:47).

Standing alone, the video does not conclusively disprove Plaintiff's claim that Ehimwenma or another staff member put a finger in Plaintiff's rectum during the roughly one minute and eighteen seconds that Plaintiff and Kirby staff are in his room and off camera. Nevertheless, the video does show cautious hospital staff attempting to treat Plaintiff in a non-menacing and professional manner, and disproves Plaintiff's claim of "they're raping me" immediately prior to the time when Plaintiff goes off camera.

Moreover, Defendants have submitted evidence corroborating their claim that no medical staff penetrated Murray in his room (but for a necessary injection, *see supra*) or otherwise applied excessive force. The Declaration of Nurse Ehimwenma states that after being "released from manual restraints" applied during the administration of medication, Murray "threw himself on the floor and began inserting his own hand in his rectum." (Dkt. No. 45 ("Ehimwenma Decl.") ¶ 4). The Ehimwenma Declaration's assertions regarding Plaintiff's behavior are further corroborated by her contemporaneous progress note, timestamped between 7:15 a.m. and 7:25 a.m., which details what had taken place just minutes before.

25

(*See id.* Ex. 1). The progress note states that Plaintiff was restrained for "2 minutes," an estimate which generally aligns with the amount of time spent in Plaintiff's room as reflected in the surveillance video. (*Id.*; Gavins Decl. Ex. 5 at 11:30-12:48). Further, Dabo denies that he ever ordered "any staff members to perpetrate any forms of abuse against" Murray. (Dabo Decl. ¶ 4).

Because the record fails to contain any evidence that Plaintiff was assaulted on April 20, 2022, and shows that whatever force Kirby staff did use during the administration of involuntary medication on that date was justified, no reasonable juror could find in Murray's favor on his claim for excessive force. Therefore, this claim should be dismissed. *See Brinson*, 2018 WL 4680021, at *9 (dismissing excessive force claim where evidence was unrefuted and plaintiff could not show Kirby staff's use of force to be excessive or unrelated to a legitimate government purpose).

### iii.    The Treatment Over Objection Hearing

The Complaint alleges that Dr. Dabo lied at the treatment over objection hearing before the New York Supreme Court and that, as a result, Plaintiff was forced to take medications against his will. (*See* Compl. § 3.C).

Defendants argue, in cursory fashion, that "to the extent" Plaintiff's claim attempts to attack the New York State Supreme Court's order, such a claim is barred by the *Rooker-Feldman* doctrine. (Mot. at 18, 22; *see Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over cases that

essentially amount to appeals of state court judgments")).  But it is far from clear that Plaintiff is attacking the state court judgment.  Rather, the Complaint focuses on Dabo's alleged "lie" to the state court and seeks relief only in the form of damages; it does not expressly seek to put a halt to the involuntary medication ordered by the state court.  (*See* Compl. § V).  The Second Circuit has explained that the *Rooker-Feldman* doctrine "generally does not affect a federal court's jurisdiction over claims for damages against third parties for alleged misconduct occurring in the course of a state court proceeding, because the adjudication of such claims would 'not require the federal court to sit in review of the state court judgment.'" *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022) (quoting *Vossbrinck*, 773 F.3d at 427).[13]

Although Defendants' *Rooker-Feldman* challenge raises an issue that goes to the court's subject-matter jurisdiction, *see Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 83 (2d Cir. 2005), the issue has not been adequately briefed.  Moreover, it is unclear whether Defendants contend that the *Rooker-Feldman* doctrine bars Plaintiff's claim for damages and, if so, what the proper resolution of such a contention would be.  Accordingly, the Court exercises its discretion to decide Defendants' Motion on the merits and to not reach the *Rooker-Feldman* question. *See, e.g.*, *Cantor Fitzgerald, LP v. Peaslee*, 88 F.3d 152, 155 (2d Cir. 1996)

---

[13] At the same time, *Hansen* explains that the *Rooker-Feldman* doctrine does prevent district courts from exercising jurisdiction if "the plaintiff complains of injuries caused by a state court judgment." *Id.* (cleaned up).

(recognizing that, while a federal court "[c]ustomarily" resolves issues of subject-matter jurisdiction before reaching the merits, "[o]n some occasions . . . considerations of judicial economy and restraint may persuade the court to avoid a difficult question of subject-matter jurisdiction when the case may be disposed of on a simpler ground"); *Jorge v. Hart*, No. 97 Civ. 1119 (MBM), 1997 WL 531309, at *1 (S.D.N.Y. Aug. 28, 1997) (declining to resolve issue of subject-matter jurisdiction where *pro se* petition was "easily resolved on the merits" and this alternative ground was "'considerably less difficult to decide'") (quoting *Cantor Fitzgerald*, 88 F.3d at 155).[14]

On the merits, Defendants argue that the evidence does not support a finding that Plaintiff's constitutional rights were violated by Dabo's testimony at the state court hearing. (Mot. at 18, 22). The Court agrees. Indeed, "[i]t is well established that testifying witnesses . . . are entitled to absolute immunity from liability under § 1983 based on their testimony." *Jones v. King*, No. 10 Civ. 897 (PKC), 2011 WL 4484360, at *6 (S.D.N.Y. Sept. 28, 2011); *see Briscoe v. LaHue*, 460 U.S. 325 (1983); *see also Young v. N.Y. State Corr. & Cmty. Supervision*, No. 18 Civ. 5786 (LDH) (RER), 2019 WL 591555, at *4-5 (E.D.N.Y. Feb. 13, 2019) (dismissing Section 1983 claims against psychiatrist witnesses who testified at an involuntary commitment hearing based on absolute immunity); *Gaschler v. Scott Cnty.*, Civil Action No. 94-

---

[14] *See also Kelsey v. Rutledge*, No. 21 Civ. 4298 (PMH), 2022 WL 2110436, at *9 n.10 (S.D.N.Y. June 10, 2022) (dismissing *pro se* complaint for failure to adequately plead elements of asserted claims without reaching defendants' *Rooker-Feldman* argument); *Hassan v. Marks*, No. 16 Civ. 1653 (JMA) (SIL), 2017 WL 4233038, at *2 (E.D.N.Y. Sept. 25, 2017) (same).

1134-FGT, 1996 WL 137839, at *2 (D. Kansas Feb. 22, 1996) (applying absolute immunity rule to bar Section 1983 claim against county-employed doctor who allegedly gave false testimony at commitment hearing).

Moreover, there is insufficient evidence in the record to support a finding that Dabo lied. At the April 27, 2022 hearing, Dabo testified that Murray "has consistently been disruptive on the ward. He is engaging in attacking staff, biting, spitting, smearing feces in patient's bathroom, and intentionally biting staff." (Gavins Decl. Ex. 1 at 5:1-4). Presumably, this is the "lie" that Murray claims Dabo told at the hearing. (*See* Compl. § 3.C ("Dabo lied in med court [and] told them that I was assaulting staff when I was the one being assaulted")).

But the uncontroverted evidence before the Court shows that Murray in fact did the things Dabo claimed. This evidence includes not only Dabo's own detailed declaration submitted on this Motion, but also the contemporaneous treatment notes from Kirby staff (Dabo Decl. ¶¶ 2-5; *id.* Exs. 1-4; Hamalian Decl. Ex. 1; Ehimwenma Decl. Ex. 1) and, as Defendants note (Mot. at 18), a contemporaneous email from the Mental Hygiene Legal Services attorney who represented Murray at the hearing. (Dkt. 16 at 10, Email dated April 26, 2022 from David Tull stating that Murray "has been smearing and throwing feces, in addition to spitting and assaulting staff"); *see* Gavins Decl. Ex. 1 at 2:5-9)).

Murray has failed to put forth any evidence to support a contrary finding. Notably, Murray's own counsel cross-examined Dabo at the hearing, but the cross-examination was limited to Murray's need for certain medications; it did not

challenge Dabo's testimony about Murray's assaultive behavior.  (Gavins Decl. Ex. 1 at 12:21-14:8).  Indeed, in his own testimony at the state court hearing, Murray did not deny that he had engaged in the conduct described in Dabo's testimony. (Gavins Decl. Ex. 1 at 14:12-17:14).[15]

The Court's review of the record thus shows that no reasonable juror could find that Dr. Dabo lied during the state court hearing or violated Plaintiff's due process rights.  Summary judgment is warranted on this claim as well.

### iv.    Removal of Plaintiff's Wheelchair

Murray last alleges that, on Dabo's instructions, Kirby staff confiscated his wheelchair on April 15, 2022 and "for like 4 [d]ays."  (*See* Compl. § 3.C; *id.* at 7 (Email from Sarah Petrick dated July 21, 2022)).  In their Motion, Defendants concede that, on several occasions, Murray's wheelchair was indeed temporarily removed when Murray used it as a weapon or as a means to facilitate attacks on hospital staff.  (Mot. at 23 (citing Dabo Decl. ¶¶ 17-18)).

To the extent Murray asserts an independent Fourteenth Amendment claim about Defendants' actions with respect to his wheelchair, the Court construes it as a claim that Defendants were deliberately indifferent to his medical needs.  *See, e.g.*, *Boomer v. Bentivegna*, No. 19 Civ. 4754 (PMH), 2021 WL 1163658, at *3-4 (S.D.N.Y.

---

[15] As Defendants note, during Plaintiff's testimony, "he began to recite a non-responsive, lengthy list of perceived threats," requiring the presiding judge to "mute[] Plaintiff's line so that the proceeding could continue."  (Mot. at 8).

Mar. 26, 2021) (analyzing prisoner's allegation that he was improperly denied a wheelchair as a claim for deliberate indifference).

The test for establishing a deliberate indifference claim under the Fourteenth Amendment has two prongs. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Genao*, 2024 U.S. Dist. LEXIS 2286, at *18. First, the plaintiff must show a "sufficiently serious" medical condition, *i.e.*, one that "pose[s] an unreasonable risk of serious damage to his health." *Genao*, 2024 U.S. Dist. LEXIS 2286, at *18 (cleaned up). Second, the plaintiff must show that the defendant acted with deliberate indifference to his medical needs, which "'can be established by either a subjective or objective standard: [a] plaintiff can prove deliberate indifference by showing that the defendant official recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to [the plaintiff's] health or safety.'" *Id.* at *19 (quoting *Charles v. Orange Cnty.*, 925 F.3d 73, 86-87 (2d Cir. 2019)) (cleaned up).

Here, Murray fails to satisfy either prong. First, Defendants have submitted uncontroverted evidence that Plaintiff's wheelchair was not medically necessary. Despite Plaintiff's claim that he needed a wheelchair, "he was observed multiple times walking freely without any assistance." (Dabo Decl. ¶ 17). When asked about this, Plaintiff "responded that he had a pending lawsuit against the Department of Correction and that his attorney advise[d] him to remain in the wheelchair to make his case more compelling." (*Id.*). Further, Murray does not claim he suffered any

31

specific medical harms caused by the temporary deprivation of a wheelchair.  Based on these established facts alone, Murray's deliberate indifference claim should be dismissed because removing a non-medically necessary wheelchair is not "sufficiently serious" within the meaning of *Darnell* to warrant a deliberate indifference claim.  *See, e.g.*, *Gray v. Ramos*, No. 19 Civ. 3836 (KPF), 2021 WL 795166, at *8 (S.D.N.Y. Mar. 2, 2021) (deprivation of wheelchair not sufficiently serious where plaintiff did not claim it caused him any medical harm).

Even if Plaintiff could somehow overcome this hurdle, the unopposed evidence in the record offers no support for a finding that Defendants were deliberately indifferent to Murray's medical needs.  Kirby staff offered Murray "a thorough physical exam by a medical specialist and a referral to a neurology clinic," but he declined.  (Dabo Decl. ¶ 17).  Dabo attempted to encourage Murray to ambulate, but Murray accused him of "attempting to foil his lawsuit against the Department of Correction."  (*Id.*).  Moreover, Kirby staff permitted Plaintiff to use his wheelchair most of the time, taking it away from him temporarily only on those occasions when he tried to use it as a weapon to hurt hospital staff.  (*Id.* ¶ 18).  On this record, no reasonable juror could conclude that the temporary removal of Plaintiff's wheelchair exhibited an intentional or reckless disregard for Plaintiff's health or even a failure to use reasonable care.  The deliberate indifference claim should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' motion for summary judgment be **GRANTED**.  The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff at ID#10510, Mid-Hudson Forensic Psych. Center, 2834 Route 17M, New Hampton, NY, 10958-0158.


DATED:    New York, New York
          February 2, 2024

                                        _____
                                        GARY STEIN
                                        United States Magistrate Judge


## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from the date of this Report and Recommendation to file written objections thereto.  *See also* Fed. R. Civ. 6(a), (b), and (d).  Any such objections shall be filed with the Clerk of Court.  Any request for an extension of time to file objections must be directed to Judge Caproni. A failure to file timely objections will preclude appellate review.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner v. Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).